# SUPREME COURT

### The People *ex rel.* The Commissioners of Emigration agt. The Supervisors of Richmond county.

A *writ of mandamus* should not be ordered in a case of doubt, or where the issuing of it would give rise to greater difficulties than would arise from its refusal.

Under the act of 1860 (*ch.* 465,) commissioners were appointed to ascertain and certify the damages caused by the destruction of the marine hospital and quarantine buildings on Staten Island, and to ascertain and certify the value of the buildings and other property held by the commissioners of emigration in trust for the people, and the damages sustained by their destruction; and also upon request of any person who had any property injured or destroyed at that time, to ascertain and certify the value of such property, and what damages had been sustained.

The board of supervisors of Richmond (by the same act) were to issue bonds for the amounts certified to be due to the commissioners of emigration, and the people of the state, which bonds the treasurer of the state was authorized to receive to the amount so certified in favor of the people of the state, and the commissioners of emigration should receive the said bonds to the extent of the amount so certified in their favor.

*Held,* that the statute had been substantially complied with by the supervisors, by issuing these bonds to the people of the state, and by delivering them to the treasurer of the state. The application of the commissioners of emigration for a mandamus to compel the delivery of the bonds certified to them, denied.

*New York Special Term, July,* 1861.

APPLICATION for a mandamus, by the commissioners of emigration.

JOHN E. DEVELIN, *for application.*

INGRAHAM, Justice. This application is made by the commissioners of emigration to compel the board of supervisors of Richmond county to deliver to the commissioners, bonds for the destruction of the public property at quarantine, in pursuance of the act of April 16, 1860.

The act of 1847, ch. 483, vested in the commissioners of emigration the hospital on the east shore of Staten Island, and the land adjoining, belonging to the state, known as the marine hospital, and all the buildings and improvements thereon, to be held by them in trust for the people.

This act was amended by act of 1849, ch. 350, and vested in the commissioners the marine hospital, and all lands and buildings thereon, and all lands and buildings thereafter to be purchased or designated for a hospital, or lands and buildings used for quarantine purposes in trust for the people.

The act of 1860, ch. 465, provided for ascertaining the damages caused by the destruction of the marine hospital and quarantine buildings. Under this act, commissioners were appointed, whose duty it was to ascertain the value of the buildings and other property held by the commissioners of emigration in trust for the people, and the damage sustained by their destruction; and also upon request of any person who had any property injured or destroyed at that time, to ascertain the value of such property and what damages had been sustained.

The commissioners were to certify the value of the hos-

pitals and other buildings, and of other property held by the commissioners, and the damage sustained by them as trustees or otherwise, and the damages sustained by the people of the State, and the damages sustained by other people.

The same act made it the duty of the board of supervisors to issue bonds for the amounts certified to be due to the commissioners of emigration, and the people of the state, to be paid in ten equal annual instalments. And it was then provided as follows: " Which bonds, when so issued, the treasurer of the state is authorized to receive to the amount so certified in favor of the people of the state by the said commissioners, and the commissioners of emigration shall receive the said bonds to the extent of the amount so certified in their favor."

It appears, from the affidavits, that the commissioners awarded that the value of the marine hospital, and other buildings and property within the quarantine enclosure, and held by the commissioners of emigration in trust for the people, was $101,552.50, and that the damage to the same was, with interest, $107,251.79, and the award was to the commissioners of emigration as trustees for the people of the state of New York.

This amount, or the bonds therefor, were demanded by the commissioners of emigration from the supervisors, which demand was not complied with.

The board of supervisors show, for cause against this application, that they issued the bonds for the amount, in pursuance of the award, payable to the people of the state of New York, and such bonds have been delivered to and accepted by the treasurer of the state, as the proper person to receive the same, and, therefore, they cannot comply with the requirements of the relators.

The single question, therefore, arises in this case, whether the treasurer of the state or the commissioners of emigration should receive and hold these bonds.

The statute, above referred to, provides for the delivery

of some bonds to the treasurer and some to the commissioners. The bonds to be received by the treasurer are for the amount awarded to the people of the state, and the bonds to be received by the commissioners are for the amount certified in their favor.

It does not appear that any award was made or contemplated to the people, except what might be awarded for buildings upon the public property, and the award, as made, although nominally to the commissioners of emigration, is stated to be to them as trustees for the people of the state.

I cannot avoid the conclusion that the intent of the statute was to direct the commissioners to award to the people the damage for buildings, &c., and to the commissioners of emigration any claim for damages which they might sustain for the loss of furniture or other property, placed by them upon and in the premises under their charge. The statute has been substantially complied with, by delivering these bonds to the treasurer of the state. If the intent was to place these bonds with the commissioners of emigration, and in their charge, the legislature will be able, at their next session, so to direct.

There would be serious difficulty arising from a new issue of bonds, if those now in the hands of the treasurer are legally issued.

Such new bonds would of course be invalid, as the board of supervisors have not authority to issue, except for the amount awarded, and the bonds now issued could not be obtained from the treasurer without authority of the legislature.

The granting of this writ is a matter of discretion, and it should not be ordered in a case of doubt, or where the issuing of it would give rise to greater difficulties than would arise from its refusal.

There can be no doubt that the bonds are perfectly safe in the custody of the treasurer of the state. The interest is the same, whether the bonds are placed in his custody

or that of the commissioners of emigration. In either case they must be held for the use of the people, and under such circumstances I think it better to refuse the application, leaving to the legislature to make such disposition of them as in their judgment shall be deemed best, rather than by yielding to a technical objection, to place the board of supervisors of Richmond county in the serious dilemma of having issued double the amount of bonds authorized by law.

Motion for a mandamus is denied, without costs.